UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LINDA A. McGREEVY,

                        **Plaintiff,**

              v.                                  1:03-CV-707
                                                    (FJS/RFT)

PROVIDENCE WASHINGTON INSURANCE
COMPANY and HOWARD BLUTE, in his Individual
Capacity as Manager for the Business Development
Executives at Washington Insurance Company,

                        **Defendants.**

_____

**APPEARANCES**                                         **OF COUNSEL**

**GALVIN & MORGAN**                       **JAMES E. MORGAN, ESQ.**
217 Delaware Avenue                      **JEREMY P. CHEN, ESQ.**
Delmar, New York 12054
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC**     **EILEEN K. SMITH, ESQ.**
111 Washington Avenue
Albany, New York 12210
Attorneys for Defendants

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       Plaintiff asserts claims of disparate treatment pursuant to 29 U.S.C. § 626 ("ADEA") and of disparate treatment and retaliation pursuant to 42 U.S.C. §§ 2000e-2, 2000e-3 ("Title VII").

       Currently before the Court is Defendants' motion for summary judgment.

## II. BACKGROUND

The following facts are not in dispute. Plaintiff was born on July 24, 1942. Defendant Providence Washington Insurance Company ("PWI") hired her in September 1996 as a Business Development Executive ("BDE"). Plaintiff held the position of BDE until Defendant PWI offered her "'reduction in staff'" in June 2002. *See* Defendants' Statement of Material Facts at ¶ 5.

Defendants PWI's BDEs were responsible for retaining agents to sell its product to customers who fit its prototype. Plaintiff had the work experience necessary for her position. During her employment with Defendant PWI, she worked in the Northeast New York territory. Since all of her supervisors were located in Defendant PWI's Rhode Island offices, she was a remote employee who resided in Albany, New York. When she began her employment, her direct supervisor was Steven McGrath. In 1997, Defendant PWI hired Defendant Blute as its Vice President of Agency Development. That same year, Defendant Blute became the Branch Manager of Defendant PWI's Northeast Branch Office and Plaintiff's direct supervisor. Defendant Blute reported directly to Reginald Stith, who was, at all times pertinent to this action, Defendant PWI's Senior Vice President of Field Operations.

During her employment with Defendant PWI, Plaintiff was an average employee, only generally meeting Defendants' performance expectations on her performance reviews. Defendant Blute instructed her that BDEs were expected to achieve a score of at least 3.0 on their self-audit reviews. Her self-audit review scores were 2.92 for 1998-99, 2.84 for 1999-2000, and 2.68 for 2000-01. She does not deny that she had difficulty controlling the type of business that her agents wrote, and on numerous occasions Defendant Blute spoke with her about the poor

risks associated with that business. In fact, immediately after terminating Plaintiff, Defendants cancelled three of her agents. Plaintiff also does not deny that she had difficulty submitting new business to Defendant PWI's offices in a timely fashion and admits that this problem had existed for three to four years.

In February 2002, in order to improve Plaintiff's work performance, Defendants placed her on a Performance Improvement Plan ("PIP"). According to her PIP, Plaintiff was to (1) achieve a minimum score of 3.0 in the areas of risk selection and pricing on all new business renewal files that Defendant Blute reviewed, (2) send all new business to Defendant PWI each Friday, (3) appoint at least three new agents who fit Defendant PWI's prototype, and (4) manage the personal lines business with agents in a manner that she and Defendant Blute had discussed on previous occasions. The PIP gave Plaintiff 120 days to meet these objectives or face the possibility of termination. At some point, apparently after the 120 days, Defendant PWI gave Plaintiff notice that it was terminating her employment. Plaintiff accepted Defendant's reduction-in-staff benefits and resigned her employment effective June 28, 2002.

### III. DISCUSSION[1]

**A.   Standard of review**

A court may grant summary judgment when the moving party carries its burden of showing the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). In making

---

[1] Defendants' papers cite several unreported Second Circuit decisions. The Second Circuit has clearly indicated that such decisions "shall not be cited or otherwise used in unrelated cases before this *or any other court*." Local Rules of the Second Circuit § 0.23 (emphasis added). The Court warns Defendants' counsel that future citation to unreported Second Circuit decisions may lead to the imposition of sanctions.

this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). If the moving party has met its burden, the nonmoving party may not rely upon his pleadings but must come forward with specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

**B.     Defendant Blute**

"'[I]ndividuals are not subject to liability under Title VII.'" *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (quotation and other citation omitted). "Nor is there individual liability under the ADEA." *Wyatt v. Zuckerman*, No. 93 Civ. 8027, 2005 WL 525256, *8 (S.D.N.Y. Mar. 7, 2005) (citations omitted); *see Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 273 F. Supp. 2d 292, 326 n.29 (W.D.N.Y. 2003) (citation omitted); *Langlie v. Binghamton Univ. Pub. Safety Dep't*, No. 98-CV-1930, 2001 WL 286405, *3 (N.D.N.Y. Mar. 13, 2001) (citations omitted). Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's claims against Defendant Blute.

**C.     Plaintiff's ADEA disparate treatment claims**

The *McDonnell Douglas* three-step burden-shifting analysis generally applies to ADEA disparate treatment claims. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 76 (2d Cir. 2001) (quotation omitted). The first step of that analysis requires Plaintiff to establish a *prima facie* case of discrimination. *See id.* (citation omitted). She may do so

> by showing that (1) she was within the protected age group, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) that action took place in circumstances giving rise to an inference

> of discrimination.

*Id.* at 76-77 (citation omitted). If Plaintiff establishes a *prima facie* case of discrimination, she creates a presumption of unlawful discrimination, and the burden shifts to Defendants to present a nondiscriminatory reason for their adverse employment action. *Id.* at 77 (quotation omitted). If Defendants satisfy their burden, Plaintiff "must then meet her ultimate burden of proving that she was the victim of intentional discrimination without the benefit of *McDonnell Douglas's* intermediate burdens and presumptions." *Id.* (citation omitted).

Defendants concede, for purposes of their motion only, that Plaintiff has satisfied the first three elements of a *prima facie* ADEA case. They contend, however, that she has not shown that the circumstances surrounding her termination give rise to an inference of discrimination. Plaintiff argues that several circumstances give rise to such an inference. She asserts that Defendants' desire to terminate her created a negative atmosphere around her that made her unable to comply with their directives. She also alleges that Defendants placed her on the PIP without warning and forced her from her position even though she made every attempt to comply with the PIP and had always been a reliable and trustworthy employee. She argues that Defendants gave her an impossible workload and denied her the necessary support. Although Plaintiff supports these allegations with citations to her deposition and affidavit, she has not pointed to any evidence that indicates that Defendants may have taken these alleged actions on account of her age. In fact, she admits that neither Defendant Blute, Mr. McGrath, nor Mr. Stith ever made discriminating comments to her regarding her age. *See* Plaintiff's Statement of Material Facts at ¶ 43. Furthermore, during her deposition, the following exchange occurred:

> Q    . . . . Why do you believe – what happened to make you

>believe that the reason you were placed on the PIP and ultimately terminated by Providence Washington was because of your age and your gender?
>
>A    I think they were blaming the fact that the processing not being done timely was due to the fact that she can't – she just can't cut it any more, she is beyond that point of being able to do it.
>
>Q    So you think that they thought you were becoming inefficient because of your age?
>
>A    Yes.
>
>Q    Did they ever say anything to make you believe that?
>
>A    No, it was just a general feeling that I got.

*See* Deposition of Linda A. McGreevy, taken on August 23, 2004, Dkt. No. 10 at Pt. 31, at 297:23-298:11.[2]

Plaintiff also alleges that Defendants gave a younger employee, Patricia Chase, some of Plaintiff's work after her termination. Defendants admit that Ms. Chase and Joseph Andrade took over some of Plaintiff's agents. *See* Defendants' Statement of Material Facts at ¶¶ 56, 58. However, the parties agree that, at the time Ms. Chase took over these agents, she was already working for Defendant PWI as a BDE serving agents in western New York. *See* Plaintiff's Statement of Material Facts at ¶ 56.

>A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."

*Coleman v. Prudential Relocation*, 975 F. Supp. 234, 242-43 (W.D.N.Y. 1997) (quoting *Barnes*

---

[2] Since Plaintiff gave two depositions, and the parties have submitted the depositions in different formats, the Court provides full citations for each reference to her deposition testimony.

*v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.), *cert. denied*, 498 U.S. 878, 111 S. Ct. 211, 122 L. Ed. 2d 171 (1990)).  Therefore, Plaintiff has not shown that Defendants replaced her with a younger employee.

Since Plaintiff has failed to produce any evidence about the circumstances of her termination that would give rise to an inference that Defendants discriminated against her on the basis of age, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's ADEA claims.

### D.     Plaintiff's Title VII disparate treatment claims

The *McDonnell Douglas* three-step burden-shifting analysis also applies to Title VII disparate treatment claims.  *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400-01 (2d Cir. 1998) (citations omitted).  To establish a *prima facie* case of discrimination on the basis of sex, Plaintiff must show (1) that she is a member of a protected class, (2) that she was qualified for the job at issue, (3) that she suffered an adverse employment action, and (4) that the circumstances surrounding the adverse employment action give rise to an inference of discrimination.  *See Gregory v. Daly*, 243 F.3d 687, 695 (2d Cir. 2001) (quotation and other citation omitted).

Defendants again contend that Plaintiff is not able to satisfy the fourth element of a *prima facie* case.  Plaintiff makes three assertions in an attempt to satisfy this element.  First, she alleges that Defendant did not place a similarly situated male, Mitchell Fox, on a PIP.  Second, she asserts that she felt that Defendant Blute's behavior was more tolerant toward males.  Third, she states that, if she had been male, she might have received the necessary information required for her to complete her PIP objectives.

With respect to Mitchell Fox, Plaintiff states that she is only aware that he had a problem with getting his business to Defendants in a timely fashion. *See* Deposition of Linda A. McGreevy, taken August 27, 2004, Dkt. No. 10 at Pt. 31, at 78:12-22. However, Plaintiff not only had a problem submitting business in a timely fashion, she also had difficulty controlling the type of business that her agents were writing. *See* Plaintiff's Statement of Material Facts at ¶¶ 21, 25. Of the four objectives of Plaintiff's PIP, only one of them concerned the timely submission of business. *See* Dkt. No. 10 at Pt. 21. Therefore, Mitchell Fox was not similarly situated to Plaintiff.

With respect to Plaintiff's other allegations, she has presented no evidence of any actions or statements of Defendants that would support her feelings and beliefs. She cites the following portion of her deposition:

> Q.   . . . . What about the way they treated men differently than the way they treated you, starting with Mr. Blute. Do you think that he treated men differently than the way he treated you, or women, in general?
>
> A.   I think he treated men differently.
>
> Q.   How?
>
> A.   He was more – more tolerant of some of the people coming in and letting them get their business processed sooner than ours.
>
> Q.   You think he was more tolerant of that because they were men?
>
> A.   Because they were a local (sic) and they were men that he had been dealing with on a regular basis.

*See* Deposition of Linda A. McGreevy, sworn to August 27, 2004, Dkt. No. 16 at Pt. 6, at 81:7-21. This testimony is not evidence that Defendant Blute treated these men differently because of

their gender. Even if the Court accepts Plaintiff's testimony as true, it only indicates that Defendant Blute treated differently those with whom he had more frequent contact.

Plaintiff also cites to another portion of her deposition in which she alleges that certain employees received assistance that she did not and that there were instances when Defendants did not provide her with the assistance that she requested. *See id.*, Dkt. No. 16 at Pt. 7, 110:12-113:23. However, this testimony contains no evidence that Defendants' alleged differential treatment was a consequence of Plaintiff's sex. In fact, one of Plaintiff's assertions is that Defendants transferred part of her territory to another woman, Ms. Chase. *See id.*, 110:23-111:7.

Since Plaintiff has failed to produce any evidence about the circumstances of her termination that would give rise to an inference that Defendants discriminated against her on the basis of sex, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's Title VII claims.

### E.     Plaintiff's Title VII retaliation claims

Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter[] . . . ." 42 U.S.C. § 2000e-3. In order for Plaintiff to establish a *prima facie* case of retaliation under Title VII, she must prove (1) that she engaged in a protected activity that was known to Defendants, (2) that Defendants took an adverse employment action against her, and (3) that there is a causal connection between the protected activity and the adverse employment action. *See Feingold v. N.Y.*, 366 F.3d 138, 156 (2d Cir. 2004) (quotation omitted) (Title VII).

Defendants contend that Plaintiff cannot establish a *prima facie* case of retaliation

because she has not proven that she engaged in a protected activity that was known to them. Plaintiff asserts that she "engaged in protected activity when she corresponded with Defendants regarding her job performance and sought information regarding her being placed on a PIP." *See* Plaintiff's Memorandum of Law at 15. She supports this assertion with citations to her affidavit and her deposition. However, none of the statements in her affidavit to which she cites gives any indication that she communicated to Defendants her belief that they were engaging in an unlawful employment practice. *See* Affidavit of Linda A. McGreevy, Dkt. No. 14 at Pt. 1 at ¶¶ 15-23.[3] Plaintiff states that she asked Defendant Blute why he gave her low performance ratings and what she needed to do to bring up her ratings. *See id.* at ¶¶ 16-17. However, she does not state that she complained to Defendant Blute of discrimination on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. Furthermore, she does not provide any evidence indicating that her low performance ratings were a result of such discrimination. Since the other affidavit statements to which Plaintiff cites do not allege any conduct on her part, they necessarily do not allege potentially protected conduct on her part. Finally, the portion of her deposition testimony to which Plaintiff cites only contains statements regarding Defendants' alleged actions and omissions; she makes no statements about any potentially protected conduct on her part. *See* Deposition of Linda A. McGreevy, taken on August 27, 2004, Dkt. No. 16 at Pt. 5, at 69:4-70:24.

Since Plaintiff has failed to present evidence that she participated in any protected activity, she has failed to establish a *prima facie* case of retaliation under Title VII. Accordingly,

---

[3] Although styled as an affidavit, this document does not indicate whether or when Plaintiff swore to it. *See id.* at p. 8.

the Court grants Defendants' motion for summary judgment with respect to Plaintiff's Title VII retaliation claims.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** in all respects; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: June 20, 2005
      Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Chief United States District Court Judge